THE FLORIDA.

TIEDEMANN et al. v. ESTODURAS
STEAMSHIP CO., INC.

No. 10288.

Circuit Court of Appeals, Fifth Circuit.

Feb. 20, 1943.

Rehearing Denied April 1, 1943.

See, also, D.C.La., 37 F.Supp. 819.

Charles Recht, Paul J. Kern, and David Drucker, all of New York City, and Walter Carroll, of New Orleans, La., for appellants.

P. A. Beck, of New York City, and Jas. H. Bruns and Lloyd A. Ray, both of New Orleans, La., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The appeal is from a final decree dismissing a libel purportedly filed on behalf of Oskar Tiedemann and other Estonian shipowners against the Honduras steamship "Florida" formerly the Estonian steamship "Signe", and against Estoduras Steamship Company, respondent and claimant of the ship. The decree also dismissed an intervening libel filed by the same proctors in the name of Estonia State Cargo and Passenger Steamship Line. The ship was released to Estoduras, and the trustee was discharged. Appeal was taken without the filing of a supersedeas bond, and it appears that the vessel is not now within the territorial jurisdiction of the Court. Cf. The Denny, 3 Cir., 127 F.2d 404.

Prior to June 17, 1940, the Republic of Estonia was a free, independent, sovereign nation recognized as such by the United States of America and other nations. On June 17, 1940, the armies of Soviet Russia invaded Estonia and other Baltic States. Thereafter there was set up in Estonia a Soviet Government, Estonian Soviet Socialist Republic, which was absorbed into the Union of Soviet Socialist Republics. The government thus set up in Estonia nationalized and confiscated all transportation and shipping enterprises including Kasmu Laeva Omanikud, Kasmu Shipowners, owners of the "Signe", now the "Florida".

The United States Government does not recognize the government set up in Estonia after the invasion, but continues to abide by the Treaty of Friendship, Commerce and Consular Rights entered into at Washington, D. C., on December 23, 1925, between it and the Government of Estonia, and continues to recognize Johannes Kaiv as the duly accredited Acting Consul General of the Republic of Estonia and in Charge of Legation.

Immediately after the passage of the nationalization decrees other decrees were passed directing owners of steamships to order their vessels to proceed to Murmansk, Russia, for the purpose of having them reduced to Russian possession. It was further provided that masters who refused to take their ships to Murmansk would be considered traitors to the State and subject to dire penalties, and that their families and near relatives would be held responsible for their disobedience. The "Signe" was in Cuba at the time, and the master, who is also part owner of the ship, refused to sail to Murmansk, and instead brought the ship to the United States in completion of a charter party under which it was then engaged. The master appealed to the recognized Estonian Con-

720

sul, Kaiv, who declared himself trustee of the ship and assumed control of its affairs. Thereafter, by direction of the Consul, Estoduras Steamship Company, Inc., was organized for the purpose of holding title to the ship and changing its registry from that of Estonia to that of Honduras, and for "the specific purpose of protecting and conserving the property rights of all the co-owners of the said SS. Signe (Renamed "Florida"), as those rights existed prior to June 17, 1940".

The "Florida" was at the Port of New Orleans in December, 1940, engaged in the performance of a charter party, when the libel for possession was filed. The libel was filed in the name of Tiedemann on behalf of himself and some thirty-five other Estonian citizens, including Rudolph Pahlberg and Boris Shivolovitch, claiming that these persons were the true and only lawful owners of the ship. The libel was filed by authority of a cabled power of attorney dated December 1, 1940, and purportedly signed and sent by Oskar Tiedemann, who claimed to have a power of attorney from the other libellants. The intervening libel alleged that Estonian State Steamship Line, a corporation organized under the laws of the Russian-Estonian Government, was then lawfully engaged in taking over the "nationalized" properties of Tiedemann and the other named owners.

The evidence shows that Tiedemann resides in Estonia, and fully supports the finding of the lower court that he was under duress of the Russian authorities when he made and executed the cabled power of attorney authorizing the filing of the libel. Pahlberg and Shivolovitch, who were named by Tiedemann as consenting part owners of the "Signe", and who were beyond the influence and domination of the Russian authorities, testified that they had not authorized anyone to sue for them; that the proctors were not authorized to file the original libel on their behalf; that Tiedemann in ordering the libel to be filed was under the domination of the Union of Soviet Socialist Republics; and that at the time of the passage of the Estonian-Russian decrees, the ship was not under the control of either the libellants or intervening libellant, but was at a port in Cuba and under the control of its master and part owner, Captain Pahlberg.

The record shows clearly enough that before June, 1940, the "Signe" was the property of Tiedemann and his associates. However, the authority of the proctors to represent them is not established. We further find that no credence should be given to the alleged power of attorney of Tiedemann since he was under duress at the time of its execution. Moreover, the intervening libellant, Estonian State Steamship Lines, which is a creature of the Russian Government, disputed the title of Tiedemann and his associates, and claimed title and right to possession of the vessel. Nowhere does the record disclose a right in libellants to possession of the ship. There is nothing save the allegations and proof as to the taking over of Estonia by Russia, and the passage of decrees of nationalization and confiscation. For aught appearing, the Russian Government may no longer possess and control Estonia. We take knowledge of the fact that by force of arms Germany has usurped and taken custody and control of Estonia from Russia, and that the status of Estonia as a nation will be determined by future events. Cf. Cia. Minera Ygnacio Rodriguez Ramos, S. A., v. Bartlesville Zinc Co., 115 Tex. 21, 275 S.W. 388; Terrazas v. Holmes, 115 Tex. 32, 275 S.W. 392.

Without discussion of the many interesting propositions of admiralty and international law posed by the briefs, we deem it sufficient to say that the only certain facts appearing from the record are that Kaiv is recognized as the duly accredited representative of the Republic of Estonia; that the United States still adheres to its treaty with that nation, and does not recognize any other government for Estonia; that Kaiv declared himself trustee for the ship and organized Estoduras to take it over and hold and keep it for its true owners. We are of opinion and so hold that on this record, which lacks clear and convincing proof of ownership by libellants, that neither the original libellants nor intervening libellant should recover, and that the District Court properly allowed Estoduras to retain possession of the vessel in trust for the co-owners. Cf. The Kuressaar, 1941 A. M. C. 1190.

The judgment is affirmed.