

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

July 11, 1963

Honorable Jesse James
State Treasurer
Capitol Station
Austin 11, Texas

Opinion No. C-107

Re: Questions relating to the
maintenance and disbursement of
the State Conservator Fund under
the provisions of Section 5 of
Article 3272b, Vernon's Civil
Statutes.

Dear Mr. James:

You have requested the opinion of this office with regard
to the State Conservator Fund established by the provisions of
Section 5 of Article 3272b of Vernon's Civil Statutes.

The relevant portion of Section 5 of Article 3272b reads
as follows:

"Section 5. State Conservator Fund. All
funds received by the State Treasurer under the
provisions of this Article or from the escheat of
any deposit, credit, account or other property
held by any bank or other institution covered by
Section 1(a) hereof shall be deposited into a
separate fund to be known as the 'State Conservator
Fund,' from which there shall be set aside and
maintained a revolving expense fund of Twenty-five
Thousand Dollars ($25,000) for the purpose of paying
expenses incurred by the State Treasurer in the
enforcement of the provisions of this Article,
including the expense of publications, forms,
notices, examinations, travel, and employment of
necessary personnel; and thereafter any amounts
remaining unpaid to owners shall be transferred to
the Available School Fund; provided that the State
Conservator Fund shall never be reduced below Two
Hundred and Fifty Thousand Dollars ($250,000).
This sum shall remain available for payments to
those who may at any time in the future establish
their ownership or right as herein provided to any
deposit or account delivered to the State Treasurer
under this Act. The moneys in such fund over Fifty
Thousand Dollars ($50,000) shall be invested from
time to time by the State Treasurer in investments

-527-

which are approved by law for the investment of any
State Funds, and the income thereof shall be and
become a part of the said State Conservator Fund.
. . ."

The specific questions which you have asked are as follows:

"1. Does the clause which reads 'provided
that the State Conservator Fund shall never be
reduced below Two Hundred and Fifty Thousand Dollars
($250,000)' mean that no payments should be made
from this fund that would result in a balance on hand
of less than $250,000? Is it intended that the sum
designated be held as a reserve to assure that there
will be funds available to pay claims, and not merely
as the original sum from which claims are to be
regularly paid?"

"2. If in your opinion funds in the sum of
$250,000 must be maintained as a reserve when should
funds be transferred from the State Conservator Fund
to the Available School Fund and in what amounts?"

"3. If you conclude that regular payments of
claims may be made from the Two Hundred Fifty Thousand
($250,000) Dollars referred to, is it mandatory that
monies received for the State Conservator Fund under
the provisions of Article 3272b be held for any specific
period of time before such funds, excepting the
$250,000 referred to and the funds to be deposited to
the revolving expense fund, may be transferred to the
Available School Fund?"

You further state that there has been no prior departmental
construction of this provision by your office.

Your questions relate to the operation and effect of Section
5 of Article 3272b and it becomes our duty to construe the language
of this Section in a manner which will impart a fair and proper
meaning to the statute and at the same time give the effect
intended by the Legislature. Russell v. Farquhar, 55 Tex. 355
(1881); Magnolia Petroleum Company v. Walker, 125 Tex. 430, 83
S.W.2d 929 (1935); Petroleum Casualty Company v. Williams, 15
S.W.2d 553 (Com.App. 1929).

The primary consideration of statutory construction is to
determine the intent of the Legislature with respect to the
particular enactment and once such intent is ascertained we are

to give it force and effect.  Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070 (1927); Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680 (1932); Second Injury Fund v. Keaton, 162 Tex. 250, 345 S.W.2d 711 (1961).

If the intent of the Legislature is discernable from the language used, then our inquiry as to such intent should properly go no further.  Gaddy v. First National Bank, 115 Tex. 393, 283 S.W. 472 (1926); Empire Gas & Fuel Company v. State, 121 Tex. 138, 47 S.W.2d 265 (1932).  On the other hand, where the intent is not clear from the language itself, we may resort to such aids as the legislative history of a particular enactment in order to arrive at the intent of the Legislature.  State v. Texas & N.O.R. Co., 125 S.W. 53 (Civ.App. 1910, error ref.).

Your first question relates to the significance of the limiting phrase, contained in Section 5, which reads:

". . . provided that the State Conservator Fund shall never be reduced below Two Hundred and Fifty Thousand Dollars ($250,000)."

Although you have stated your first question in two parts, both parts are directed toward the same inquiry and merely state the same question in different terms.  As we read this question, you are concerned as to whether this limitation prevents the payment of claims pursuant to Section 6 of Article 3272b from this particular sum of $250,000.

The general effect of a proviso is to qualify or limit something which it follows, consequently its effect is normally limited to the clause which next precedes it.  Potter v. Robinson, 102 Tex. 448, 119 S.W. 90 (1909); Fenet v. McCuistion, 105 Tex. 299, 147 S.W. 867 (1912).

Bearing this in mind, we are of the opinion that the intent of the Legislature with respect to the proviso inquired about is clear and unambiguous and any inquiry beyond the language of the statute itself would be unwarranted.  The phrase which precedes the proviso is a directive to the State Treasurer to transfer funds from the State Conservator Fund to the Available School Fund.  It is the transfer of funds to the Available School Fund to which the limitation of the proviso relates and not the payment of claims from the State Conservator Fund.  This conclusion is further substantiated by the language which immediately follows the proviso, which directs that:  "This sum shall remain available for payments to those who may at any time in the future establish their ownership or right as herein provided to any deposit or

account delivered to the State Treasurer under this Act." In our opinion, this language constitutes a positive expression by the Legislature that the sum of $250,000 is to be specifically used for the purpose of paying claims.

Therefore, in answer to your first question, you are advised that the proviso inquired about does not mean that no payments of claims should be made from the State Conservator Fund which would reduce the balance on hand below $250,000, but, to the contrary, such sum was specifically set aside by the Legislature as a source for the payment of claims properly payable under Section 6 of Article 3272b.

Since we have concluded that the Legislature intended that the $250,000 be used as a source for regular payment of claims rather than a reserve account, it becomes unnecessary to answer your second question.

Turning now to your third question, we find that the intent of the Legislature with respect to whether dormant accounts and deposits placed into the State Conservator Fund are to be held for any specific period of time prior to their transfer to the Available School Fund is not readily discernable from the language used. While there is no such time period stated in the statute, yet, the use of the phrase ". . . and thereafter any amounts remaining unpaid to owners shall be transferred to the Available School Fund; . . ." lends credence to the argument that the Legislature intended that there be a definite period of time between the receipt of the accounts and their transfer to the Available School Fund during which all money received is to be held available for payment to the owner. In the face of this ambiguity we must turn to the rules of statutory construction for an aid in determining the intent of the Legislature. As we have stated above, the history of a particular statute while before the Legislature may be resorted to as an aid to the determination of legislative intent.

Article 3272b was placed before the Third Called Session of the 57th Legislature as House Bill Number 1 and was laid before the House of Representatives on second reading on January 8, 1962. The first paragraph of Section 5, as printed in the House Journal, Fifty-Seventh Legislature, Third Called Session, January 8, 1962, at page 34, reads as follows:

"Sec. 5.  Conservator Fund.

"All funds received by the State Treasurer under the provisions of this Act or from the escheat of any deposit, credit, account or other property

held by any bank or other institution covered by Section 1(a) hereof shall be deposited into a separate fund to be known as the 'State Conservator Fund,' in which they shall be retained for a period of five (5) years after receipt, and thereafter any amounts remaining unpaid to owners shall be transferred to the General Fund; provided that the State Conservator Fund shall never be reduced below One Quarter of One Million Dollars. This sum shall remain available for payments to those who may at any time in the future establish their ownership or right as herein provided to any deposit or account delivered to the State Treasurer under this Act. The moneys in such fund over Fifty Thousand Dollars ($50,000) shall be invested from time to time by the orders of the State Banking Board in investments which are approved by law for the investment of any State funds, and the income thereof shall be and become a part of said Conservator Fund."

House Bill No. 1 was passed by the House of Representatives on third reading on January 9, 1962, and, as evidenced by the House Journal of that date, although several amendments were made, Section 5, as quoted above, was not changed. The Bill was then sent to the Senate where it was referred to the Committee on Banking.

Although House Bill No. 1, as reported out by the Senate Committee on Banking and as finally passed by the Senate, was not ordered printed in the Senate Journal, we are able to determine from the House Journal that House Bill No. 1 as changed by the Senate was passed by the House of Representatives without change.

Having thus traced the language of Section 5 of Article 3272b, we now know that the portion of Section 5 which provided that funds received under Article 3272b be held in the State Conservator Fund for a period of five years before being transferred was deliberately eliminated by the Senate and that the House of Representatives concurred in such action.

Considering the omission and the fact that no other period of time was substituted, we hold that the Legislature thereby intended that all dormant deposits and accounts placed in the State Conservator Fund pursuant to Article 3272b, with the exception of the funds to be deposited to the revolving expense fund and the $250,000 fund for reimbursement of owners, be transferred to the Available School Fund as soon after receipt as would be reasonable within the practical limits of accounting and bookkeeping procedures.

Having thus determined the intent of the Legislature with regard to the lapse of time between receipt of such fund and their

subsequent transfer, such intent must prevail over the precise language or literal meaning of the words used and any implication arising from the phrase ". . . and thereafter any amounts remaining unpaid to owners shall be transferred to the Available School Fund . . ." that such transfer should be dependent upon the lapse of other than a reasonable time must be rejected as leading away from the true intent of the Legislature.  State v. Delesdenier, 7 Tex. 76 (1851); Forshey v. Galveston, H.&H.R. Co., 16 Tex. 516 (1856); Edwards v. Morton, 92 Tex. 152, 40 S.W. 792 (1898); Weber v. Rogan, 94 Tex. 62, 54 S.W. 1016 (1900).

In conformity with the foregoing conclusions, we answer your third question by stating that there is no specified period of time for which funds are to be held in the State Conservator Fund before being transferred to the Available School Fund and, with the exception of such sum as is required to be deposited to the revolving expense fund and within $250,000 limitation upon the balance to be retained in the State Conservator Fund, such transfer of funds is to be made as soon after they are received as is reasonable, within the limits of accounting and bookkeeping procedures.

### S U M M A R Y

The proviso of Section 5 of Article 3272b that the State Conservator Fund shall never be reduced below $250,000 is a limitation upon transfers to be made to the Available School Fund and does not restrict the regular payment of claims of owners from the State Conservator Fund.  Dormant deposits and accounts placed in the State Conservator Fund under Article 3272b are not required to be held for any specific time prior to transfer to the Available School Fund, and such transfer should be made as soon after the funds are received as is reasonable within the limits of accounting and bookkeeping procedures.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By _____
W. O. Shultz
Assistant Attorney General

WOS:ca

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
Malcolm Quick
Gordon Appleman
Ernest Fortenberry
Paul Robertson

APPROVED FOR THE ATTORNEY GENERAL
BY:   Stanton Stone