# IN THE SUPREME COURT OF TEXAS

═══════════

No. 14-0548

═══════════

CITY OF INGLESIDE, TEXAS, PETITIONER,

v.

CITY OF CORPUS CHRISTI, TEXAS, RESPONDENT

═══════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════════════════

## PER CURIAM

This declaratory-judgment action involves a boundary dispute between the City of Ingleside and the City of Corpus Christi over the scope of an ordinance establishing the adjacent bay waters' "shoreline" as the common border. At issue is whether wharves, piers, docks, and other objects affixed to Ingleside's shore and projecting into bay waters are wholly on the land or water side of the "shoreline" boundary. Ingleside sued Corpus Christi seeking a declaration that "structures, both natural and man-made, that are attached to and part of the fast land, and are functionally part of the land, are entirely within the jurisdiction of" the land side of the "shoreline."[1]

In a plea to the jurisdiction, Corpus Christi challenged the trial court's subject-matter jurisdiction on multiple grounds, but the trial court rejected the plea on all counts. The court of appeals disagreed, concluding the trial court lacked jurisdiction to establish the boundary between

---

[1] "Fast land" is "[l]and that is above the high-water mark and that, when flooded by a government project, is subjected to a governmental taking." BLACK'S LAW DICTIONARY 1008 (10th ed. 2014).

the two cities because the selection of a political subdivision's boundary is "a purely political question . . . not subject to judicial review." No. 13-13-00088-CV, 2014 WL 7403974, at *2-3 (Tex. App.—Corpus Christi 2014) (mem. op.). We disagree. Ingleside's declaration does not require the court to address a nonjusticiable political question. Regardless of the matter's ultimate resolution, the declaratory-judgment action requires the court to interpret relevant boundary ordinances not select the appropriate boundary line. Whether extant natural and artificial conditions are protrusions of the "shoreline" is a justiciable issue materially distinct from a legislative determination about where to establish a municipal boundary line. Accordingly, we reverse the court of appeals' judgment and remand this case to that court to consider Corpus Christi's remaining jurisdictional challenges.[2]

A plea to the jurisdiction challenges the court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject-matter jurisdiction is a question of law reviewed de novo, *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002), and the plaintiff bears the burden of affirmatively demonstrating the trial court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In determining whether Ingleside has met its burden, we liberally construe the pleadings, taking all factual assertions as true and looking to Ingleside's intent. *Id.*

---

[2] In issues raised in the court of appeals, but not addressed, Corpus Christi asserted (1) Ingleside failed to plead and prove a valid waiver of sovereign or governmental immunity; (2) a district court in Nueces County has continuing jurisdiction over issues similar to those involved in this case based on prior litigation between Nueces and San Patricio counties; (3) there is no justiciable controversy in this case because there is no genuine disagreement that the "shoreline" is the boundary line; and (4) the Uniform Declaratory Judgment Act does not confer jurisdiction to revise, alter, modify, or amend a municipal ordinance.

In 1962, Corpus Christi enacted Ordinance 6636, which establishes the "shoreline" of Nueces Bay and Corpus Christi Bay as the boundary between Ingleside and Corpus Christi.[3]  Ingleside retains jurisdiction of the fast land located adjacent to the "shoreline" while Corpus Christi maintains jurisdiction over the land extending from the "shoreline" into the bay waters.  Neither party disputes the "shoreline" is the legislatively established border between the two home-rule municipalities.

After Corpus Christi enacted the ordinance, several piers, bulkheads, wharves, and other artificial structures were constructed and affixed to the fast land in Ingleside's jurisdiction.  The structures, however, project into Corpus Christi's jurisdiction.  As a result, each city claims the structures fall within its jurisdictional boundaries.

Believing the structures are entirely within the jurisdiction of the land-side of the shoreline, Ingleside filed a declaratory-judgment action asking the court to determine which city's boundary includes the disputed area.  Corpus Christi contends, and the court of appeals agreed, that Ingleside's declaratory-judgment action presents a nonjusticiable political question because it seeks to alter boundaries legislatively fixed more than fifty years ago.  *Cf. Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436 n.3 (Tex. 1991) ("The determination of boundaries is a question for the political branches of government rather than judicial.  Consequently, the court may not substitute its judgment for that of the municipality [and will not inquire into a municipality's motives to annex land].");  *City of Wichita Falls v. State ex rel. Vogtsberger*, 533 S.W.2d 927, 929 (Tex. 1976) (the purpose of an

---

[3] In its live pleading, Ingleside alleged it similarly enacted an ordinance establishing the "shoreline" as its shared boundary with Corpus Christi.  Although Ingleside did not plead or provide proof of the text of its ordinance, given the procedural posture of the case and liberal-construction requirements, we take as true Ingleside's factual assertion.

annexation ordinance and the use, character, and shape of the annexed territory are "legislative prerogatives").

The Texas Constitution provides that one governmental branch may not exercise those powers committed to a coordinate branch. TEX. CONST. art. II, § 1. Therefore, if a determination is constitutionally committed to the legislative branch's discretion, the judiciary is not free to substitute its judgment for that of the legislative branch. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). As it pertains to the jurisdictional boundaries of home-rule municipalities like Ingleside and Corpus Christi, the procedural validity of territorial annexation may be judicially determined—but a legislative decision to annex territory and the reasons underlying such a decision are not subject to judicial scrutiny. *See State ex rel. Pan Am. Prod. v. Texas City*, 303 S.W.2d 780, 782 (Tex. 1957) ("This power of a Home Rule City to annex territory, being legislative power, is therefore not subject to being revised by the judicial power of the courts."); *see also Alexander Oil Co.*, 825 S.W.2d at 436 n.3; *City of Waco v. City of McGregor*, 523 S.W.2d 649, 654 (Tex. 1975).

Ingleside does not allege Ordinance 6636 impermissibly establishes the "shoreline" as the territorial boundary between the two municipalities. Nor does Ingleside contest Corpus Christi's motives for selecting that particular boundary line or its authority to do so. Instead, Ingleside's declaratory-judgment action asks the court to determine whether the "shoreline," as used in the pertinent ordinances defining the municipalities' geographical boundaries, includes or excludes fixtures on the fast land that transect the water line. Corpus Christi asserts the "shoreline," although

4

variable in fact, is clear in meaning and not genuinely in dispute; Ingleside contends the fixtures are extensions of the "shoreline" and seeks a declaration to that effect.

Separation-of-powers concerns may arise if a matter is constitutionally committed to a coordinate political department or there are no judicially discoverable and manageable standards for resolving the issue. *See Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 777-78, 780 & n.180 (Tex. 2005) (observing two principle "nonjusticiable political question" tests set out by the United States Supreme Court, but declining to expressly adopt those tests as the separation-of-powers standard under the Texas Constitution); *see also Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 394 (Tex. 1989) (holding that the statutory terms "efficient" and "suitable" provided a standard by which a court could measure the constitutionality of the school-finance system); *Wheeler v. City of Brownsville*, 220 S.W.2d 457, 462 (Tex. 1949) (concluding that because annexation for municipal tax purposes is constitutionally delegated to the legislature, the judiciary may not revise the legislative determination); *Terrazas v. Holmes*, 275 S.W. 392, 395 (Tex. 1925) (selecting the rightful sovereign in a foreign territory is not a judicial question); *Tex. Adjutant Gen.'s Dept. v. Amos*, 54 S.W.3d 74, 79 (Tex. App.—Austin 2001, pet. denied) (declaring a soldier's challenge to the Texas National Guard's discharge order nonjusticiable because the military retains discretion to discharge soldiers). However, neither of those circumstances are presented here.

Courts have historically exercised their jurisdiction to resolve boundary disputes. *See, e.g., United States v. Texas*, 143 U.S. 621, 630-31, 641 (1892) (declaring a boundary dispute between the United States and Texas involving conflicting descriptions of the 100th longitude meridian justiciable); *Oklahoma v. Texas*, 272 U.S. 21, 23-24, 44 (1926) (comparing conflicting surveyor

reports to locate the boundary between Texas and Oklahoma). We have also applied standards to determine whether particular property falls within a city's boundary. *See Keith v. Hyndman*, 57 Tex. 425, 430 (1882) (determining which portion of a homestead tract fell within Corsicana's city limits). More to the point, we have previously settled disputes about how to determine the location of a boundary defined by reference to the "shoreline." *See Luttes v. State*, 324 S.W.2d 167, 179 (Tex. 1958) (defining the "seashore" boundary by reference to measured mean daily high water levels); *see also John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 281 (Tex. 2002) (applying the *Luttes* definition of "shoreline" to a boundary dispute); *Porretto v. Tex. Gen. Land Office*, 448 S.W.3d 393, 400 (Tex. 2014) (applying the *Luttes* definition of "shoreline" to determine property ownership in a takings claim). Interpreting and applying an ordinance is also well within judicial authority. *Cf. City of Fort Worth v. Gulf Ref. Co.*, 83 S.W.2d 610, 617 (Tex. 1935) (construing and applying several ordinances regulating filling station businesses).

Liberally construing the pleadings, Ingleside does not seek a declaration altering the boundary between the cities, which is indisputably the "shoreline." Instead, it merely asks the court to clarify whether the "shoreline," an unfixed and inherently variable boundary, may be reshaped by protrusions of natural and artificial fixtures on the fast land. This question does not constitute a political question beyond the Court's competence or authority. Accordingly, without hearing oral argument, Tex. R. App. P. 59.1, we reverse the court of appeals' judgment and remand this case to that court for further proceedings.

**OPINION DELIVERED:** July 24, 2015

6