

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00130-CV

**TEXAS DEPARTMENT OF
TRANSPORTATION,**

                                                    **Appellant**

 **v.**

**KATHLEEN GALLOWAY-POWE, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE ESTATES OF
MANLEY D. GALLOWAY, DECEASED AND
ELFRIEDE GALLOWAY, DECEASED,**

                                                    **Appellee**

**From the 52nd District Court
Coryell County, Texas
Trial Court No. DC-17-46346**

## MEMORANDUM OPINION

Manley and Elfriede Galloway were killed in a car accident after another driver failed to yield the right-of-way and turned left in front of the Galloways' vehicle. The Galloways' daughter, Kathleen Galloway-Powe, sued the Texas Department of Transportation for wrongful death and survivor actions. TxDOT filed a motion to dismiss for lack of jurisdiction alleging its sovereign immunity had not been waived. After a hearing, the trial court denied TxDOT's motion. Because the trial court erred in

denying TxDOT's motion to dismiss for lack of jurisdiction, the trial court's order is reversed, TxDOT's motion is granted, and judgment is rendered dismissing Powe's claims for want of jurisdiction.

SOVEREIGN IMMUNITY

A unit of state government is immune from suit and liability unless the state consents. *DART v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Id.*

A governmental unit may be sued if the Legislature has waived its immunity with clear and unambiguous language. *Harris County v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018). As relevant to the claims raised here, under the Texas Tort Claims Act's limited waiver of sovereign immunity—and absent any exception to the waiver—a governmental unit can be liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2); *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020); *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006) (noting that the Act provides a few exceptions "in which its waiver provisions do not apply").

### *Plea to the Jurisdiction*

Sovereign immunity implicates a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). Generally, we review the trial court's ruling on a plea to the

jurisdiction de novo. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016).

"A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). This is a question of law which is reviewed de novo. *Miranda*, 133 S.W.3d at 226. In determining whether the plaintiff has met that burden, we liberally construe the pleadings, taking all factual assertions as true and looking to the plaintiff's intent. *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015).

However, when a plea to the jurisdiction challenges the existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties "when necessary to resolve the jurisdictional issues raised." *Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (quoting *Miranda*, 133 S.W.3d at 227). In this instance, our standard of review generally mirrors that of a traditional summary judgment in that a plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction. *Rangel*, 595 S.W.3d at 205. Whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). To determine whether a plaintiff has met that burden, "we take as true all evidence favorable to" the plaintiff and "indulge every reasonable inference and resolve any doubts in the

[plaintiff's] favor." *Rangel*, 595 S.W.3d at 205 (quoting *Miranda*, 133 S.W.3d at 228).

**PLAINTIFF'S PETITION**

Powe raised two causes of action in her Original Petition: a "Survival Action" and a "Wrongful Death" action. She alleged her causes of action were brought under the Texas Tort Claims Act and that the trial court had jurisdiction over them because the TTCA waives sovereign immunity for claims, such as Powe's, involving personal injury or death caused by (1) the condition of a traffic control device and the claim is not exempt under Texas Civil Practice and Remedies Code § 101.060;[1] and (2) a premises defect that poses an unreasonable risk of harm about which TxDOT had actual knowledge and the Galloways did not, and for which TxDOT would be liable under Texas law if it were a private person.

In each of her causes of action, Powe alleged personal injury and death as a result of a defective condition or use of tangible personal property regarding the traffic signal devise installed and used by TxDOT. Powe alleged that TxDOT installed and used traffic signal control devices not in conformity with applicable governmental regulations, specifically "[t]he controlling Federal Highway Administration (FWHA) regulations applicable and required for signal control devises…," had actual notice of the dangerous condition created by the use of the traffic signal control devices, and failed to remedy that

---

[1] Section 101.060, as it applies to Powe, provides:

  (a) This chapter does not apply to a claim arising from:

***

    (2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice….

condition. Additionally, Powe contended the Galloways' injuries were proximately caused by TxDOT's breach of its duty, and no exception to the waiver of immunity barred the claims.

Powe also alleged in each of her claims that the intersection where the accident occurred was a defective condition that posed an unreasonable risk of harm, TxDOT had actual knowledge of the dangerously defective condition because it knew the intersection, as constructed, would and did cause an obstruction of view of approaching traffic, and the condition constituted a special defect. In the alternative, Powe asserted that the intersection was a premises defect which posed an unreasonable risk of harm about which TxDOT knew or should have known. Under either, Powe contended TxDOT had a duty to make the premises safe by either warning of the dangerous condition or eliminating the risk of harm, TxDOT did neither, the Galloways' injuries were proximately caused by TxDOT's breach of its duty, and no exception to the waiver of immunity barred the claims.

**ISSUES**

In two issues, TxDOT contends:

1) it retains sovereign immunity for discretionary actions, and

2) Powe's claims are barred by the Texas Tort Claims Act because they do not fit within the narrow waiver of sovereign immunity for premises defect claims.

**Issue One—Discretionary Function Exception**

TxDOT first asserts that it retains sovereign immunity for its design decisions regarding both the signal to be used and the construction of the intersection because those decisions are discretionary pursuant to an exception found in section 101.056 of the Texas

Tort Claims Act; and thus, TxDOT is immune from suit. *See* TEX. CIV. PRAC. & REM CODE § 101.056.

Often referred to as "the discretionary function exception," a governmental unit retains its immunity pursuant to section 101.056 for claims based on (1) the failure to perform an act that the unit is not required by law to perform; or (2) the unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the governmental unit's discretion. *Id.*; *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 665 (Tex. 2019). In other words, section 101.056 generally preserves immunity not only for the State's public policy decisions, but also for the State's failure to act when no particular action is required by law. *Tarrant Reg'l Water Dist.*, 572 S.W.3d at 662. Consequently, immunity is not waived in suits based on discretionary acts. *See Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 866-67 (Tex. 2002) (per curiam); *State v. Burris*, 877 S.W.2d 298, 299 (Tex. 1994).

An act is discretionary if it requires exercising judgment and the law does not mandate performing the act with such precision that nothing is left to discretion or judgment. *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). Whether a governmental activity is discretionary is a question of law. *State v. San Miguel*, 2 S.W.3d 249, 251 (Tex. 1999).

*Intersection Design*

We begin with Powe's allegation in each of her causes of action that the intersection, itself, was a defective condition or a premises defect. Specifically, she contended that, because of the contour of highway, the intersection was constructed in

such a way that vehicles approaching the intersection from the north in a southbound direction essentially disappeared from the view of the northbound traffic seeking to make a left-hand turn which posed an unreasonable risk of harm. TxDOT asserted in its motion to dismiss that these claims for each cause of action related solely to TxDOT's design of the intersection of the accident, and thus, Powe's pleadings negated a waiver of immunity. We agree that TxDOT retains immunity as to Powe's claims about the design of the intersection.

Decisions about highway or roadway design are discretionary, and the governmental entity responsible may not be sued for such decisions. *State v. San Miguel*, 2 S.W.3d 249, 251 (Tex. 1999); *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999) (finding that the design of highway and lack of barrier in median between north and southbound lanes reflected discretionary decisions for which TxDOT retained immunity); *Harris County v. Estate of Ciccia*, 125 S.W.3d 749, 753 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("The design of a roadway is a discretionary function involving many policy decisions; thus, the responsible governmental unit's sovereign immunity is not waived for flawed roadway design."). *See also State v. Burris*, 877 S.W.2d 298, 299 (Tex. 1994) (premises and special defect theories cannot bypass the State's immunity for discretionary roadway design under section 101.056 of the Tort Claims Act.).

Powe denies in her brief on appeal that her underlying complaint is about the design of the intersection. Rather, she contends she complained that the intersection, as designed, required correction or warning. This is a distinction without a difference. Powe pled that the intersection was constructed in such a way that vehicles approaching

the intersection from the north in a southbound direction essentially disappeared from the view of the northbound traffic seeking to make a left-hand turn which posed an unreasonable risk of harm. Based on the pleadings, the trial court could not reach the issue of correction or warning without determining the existing intersection design created a defective condition or a premises defect.

Further, there were no pleadings or evidence that any law required TxDOT to design the intersection in a certain way. As we stated previously, there is, however, caselaw that the design of a roadway or highway is discretionary. Applying the controlling caselaw, the design of the intersection at issue here is a discretionary act. Thus, Powe's pleadings did not affirmatively establish a waiver of TxDOT's immunity because, pursuant to the discretionary function exception of section 101.056, the Tort Claims Act's waiver of immunity does not apply to Powe's claims.

Accordingly, the trial court erred in denying TxDOT's motion to dismiss Powe's claims under each cause of action regarding the *design* of the intersection.

### *Type of Signal*

Powe also alleged in each of her causes of action that TxDOT installed and used traffic signal control devices not in conformity with applicable governmental regulations, specifically, federal highway regulations. In its motion to dismiss, TxDOT again relied on section 101.056 of the Tort Claims Act to assert that the use of a particular traffic signal was within TxDOT's discretion, and thus, not subject to the Tort Claims Act's waiver of immunity. Powe responded that TxDOT had no discretion to use the wrong type of signal because the National Manual on Uniform Traffic Control Devices preempts the

Texas Manual on Uniform Traffic Control Devices and, if any device is used, requires the use of a particular traffic control device. Thus, her argument continued, because a particular traffic control device was required by "federal law" and TxDOT did not use the required traffic control device, immunity was waived.

<u>Manual on Uniform Traffic Control Devices</u>

The National Manual is "recognized as the national standard for all traffic control devices installed on any street, highway, bikeway, or private road open to public travel in accordance with 23 U.S.C. 109(d) and 402(a)." NATIONAL MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES, 2009, Introduction, p. 1-1. The location, form and character of…traffic signals installed or placed by any public authority or other agency, shall be subject to the approval of the State transportation department with the concurrence of the Secretary [of Transportation]…. 23 USCS §§ 101; 109(d).

States and other Federal agencies may have their own manuals, but they must be in substantial conformance with the National Manual. 23 C.F.R. § 655.603(b)(1). Thus, Federal regulations explicitly allow for and anticipate the implementation of both a national manual and state-specific manuals. *See id*. "Substantial conformance" means that the state's manual will conform, at a minimum, to the standard statements included in the National Manual. *Id*. FHWA Division Administrators will approve state manuals "that are in substantial conformance" with the National Manual. *Id*. By allowing each state to submit its own version of the MUTCD for review and approval by the FHWA, federal regulations allow both a national manual and a state manual to coexist.

Relevant to this case, the executive director of TxDOT certified the 2011 Texas Manual. Further, the FHWA determined that the 2011 Texas Manual is in substantial

conformance with the National Manual.

Is it Law?

It is well-established that compliance with the Texas Manual is not mandatory. *Brazoria Cty. v. Van Gelder*, 304 S.W.3d 447, 454 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see State Dep't of Highways & Pub. Transp. v. King*, 808 S.W.2d 465, 466 (Tex. 1991) ("It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation."). *See also* TEXAS MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES, 2006, Revision 1, Introduction, p. ix ("The provisions of this Manual do not create mandatory duties, as opposed to discretionary duties, in the legal sense under the Texas Tort Claims Act and elsewhere…This Manual does not establish a mandatory legal duty to install particular traffic control devices."); TEXAS MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES, 2011, pp. I-1-I-2 (same). Nevertheless, Powe asserts compliance with the *National Manual* is mandatory; thus, requiring compliance.

Powe points to a few provisions in the National Manual and an affidavit from a consulting traffic engineer to support her argument that TxDOT was required "by law" to follow federal regulations. While the provisions of the National Manual introduced into evidence at the hearing on TxDOT's plea to the jurisdiction use the word "shall,"[2] the Standard[3] in Section 1A.09 of the National Manual states, "This Manual describes the

---

[2] *See e.g.*, NATIONAL MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES, 2009, § 4D.20 ("If a separate left-turn signal face is being operated in a protected/permissive left-turn mode, a CIRCULAR GREEN signal indication *shall* not be used in that face.") (emphasis added).

[3] Each section in both the National Manual and the Texas manual are divided into Standards, Guidance, Options, and Support.

application of traffic control devices but shall not be a legal requirement for their installation." Powe contends this only means TxDOT was not required to install any traffic control device at the intersection at all. But, her argument continues, when it installed a particular device, TxDOT was required to comply with the National Manual. We disagree with Powe.

In the 2003 National Manual, the Guidance section under 1A.09 stated, "the decision to use a *particular device* at a particular location should be made on the basis of either an engineering study or the application of engineering judgment" (emphasis added) and "this Manual should not be considered a substitute for engineering judgment." That language was removed from the 2009 National Manual. But in an official interpretation of the removal, the FHWA explained that the removal was not intended to change the previously existing meaning of the Standard. Thus, the FHWA said, States could maintain or adopt language in their state manuals in conformance with the language of 1A.09 from the 2003 National Manual without jeopardizing their "substantial conformance" with the 2009 Manual. Texas did just that, and the executive director of TxDOT certified the 2011 Texas Manual and the FHWA approved it as substantially conforming with the National Manual. Thus, in Texas, and with the approval of the FHWA, the decision to place a particular device at a particular location is not controlled exclusively by the National Manual. Consequently, the National Manual cannot be considered "law" as that term is used in section 101.056 of the Tort Claims Act.

Regarding Powe's consulting expert's affidavit, the expert could not say during his deposition that TxDOT was "legally obligated" to install traffic control devises recommended in the National Manual. Yet, two months later, he stated in his affidavit

attached to Powe's response to TxDOT's motion to dismiss that traffic control devises were *required* to comply with the 2009 National Manual standard and TxDOT did not have the discretion to ignore or fail to follow the 2009 National Manual. No support for this statement is included in the affidavit. Thus, the statement is conclusory at best.

Powe also points to case authority for the proposition that under certain circumstances, federal regulations have the "force and effect" of law, Congress can preempt state law, and Congress can condition federal funding on state conformity to federal regulations; thus, her argument continues, the National Manual controls. None of the cases cited, however, hold that the National Manual is mandatory as to traffic control signals, is "law" as contemplated by section 101.056 of the Texas Tort Claims Act, or preempts Texas law, specifically section 101.056.[4]

Powe did not plead in her petition, analyze, or present evidence on the steps necessary to show a federal preemption of section 101.056. *See R.R. Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 690-691 (Tex. 1992) (setting out how Congress's preemption of state law may be determined). Nor did Powe plead, analyze, or present evidence that accepting federal funding waives TxDOT's immunity for tort claims. *See Hurst v. Tex. Dep't of Assistive & Rehabilitative Servs.*, 482 F.3d 809, 811 (5th Cir. 2007) (state's receipt of

---

[4] *See Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S. Ct. 1705, 60 L. Ed. 2d 208 (1979) (discussing the applicability of the Trade Secrets Act, codified by Congress at 18 USCS § 1905); *Frank v. Delta Airlines*, 314 F.3d 195 (5th Cir. 2002) (discussing preemption of state-law tort action by codified FFA regulations which specified preemption and the Omnibus Transportation Employee Testing Act of 1991); *Stevenson v. Fort Worth & W. R.R. Co.*, No. 10-16-00244-CV, 2017 Tex. App. LEXIS 9402 (Tex. App.—Waco Oct. 4, 2017, pet. denied) (mem. op.) (discussing the preemption of a state-law tort action by specific provisions of the Federal Railroad Safety Act). *See also South Dakota v. Dole*, 483 U.S. 203, 107 S. Ct. 2793 (1987) (loss of federal funding minimal when State set drinking age lower than 21, not a compulsion to comply and not a violation of the Spending Clause).

federal funds does not automatically constitute a waiver of immunity); *Wion v. Thayler,* No. 10-09-00369-CV, 2010 Tex. App. LEXIS 9153, at *6 (Tex. App.—Waco Nov. 17, 2010, no pet.) (mem. op.) (same). The arguable "requirement" to comply with the manual is so that the State can, or will, qualify for federal funds for highway projects or this one in particular. We do not believe that acceptance of federal funds, if any, for general highway funding, for the specific project generally, or specifically, for the device in question, would operate to waive the State's sovereign immunity; rather, it may expose the State to loss or return of federal funding. *See e.g.* 23 U.S.C.S. § 158(a), (b) (the withholding of funds and its effect for non-compliance with the national minimum drinking age); 23 U.S.C.S. § 131(b) (Federal-aid highway funds reduced by 10% to any State which has not made provision for effective control of the erection and maintenance of outdoor advertising signs, displays, and devices along the Interstate Highway System). Breach of the agreement, if any, with the federal government for funding of the specific project or device, without some specific authority, which we have not found, does not turn every citizen using the project or device into a private United States attorney general to enforce the agreement, if any, between the federal and state governments by waiving sovereign immunity for torts that may result from the State's failure to strictly comply with the manual.

Relevant case authority is sparse, and we have found no case holding that the National Manual as to traffic control devices is mandatory in its compliance or that it is the type of "law" required by section 101.056 to waive immunity. However, we have found a few cases tending to show the opposite. In the only Texas state court decision in this area of the law, the Fort Worth Court of Appeals analyzed certain provisions of the

National Manual and determined those provisions did not dispense with TxDOT's discretionary duty to use certain warning signs and traffic control devices and any failure to comply with the National Manual did not waive immunity under section 101.060 (a)(1) of the Texas Civil Practice and Remedies Code.[5] *Tex. DOT v. Andrews*, 155 S.W.3d 351, 359-360 (Tex. App.—Fort Worth 2004, pet. ref'd). Further in an unpublished opinion, a United States District Court determined that the National Manual, itself, is not a federal law, but merely advisory. *See Peruta v. City of Hartford*, No. 3:09-cv-1946 (VLB), 2012 U.S. Dist. LEXIS 120228, at *42, *44 (D. Conn. 2012). *See also Daniel E. Davis & Davis Heavy Haul Transp., Inc. v. Union Pac. R.R. Co.*, Civil Action No. B: 12-212, 2015 U.S. Dist. LEXIS 189428, at *5 n.3 (S.D. Tex. 2015) (holding summary judgment appropriate because the Federal Railroad Safety Act completely preempts state law regarding adequate warning devices at railroad crossings but noting sign at the crossing was sanctioned but not mandated by the National Manual, citing *Peruta*).

Regardless of case authority or lack thereof, based on the record before us, neither Powe's pleadings, nor the evidence presented, established, or created a genuine issue of material fact, that TxDOT was required *by law* to install a certain type of traffic signal and its failure to do so waived TxDOT's immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.056.

Accordingly, the trial court erred in denying TxDOT's motion to dismiss Powe's claims under each cause of action regarding the *traffic signal* used by TxDOT.

TxDOT's first issue is sustained.

---

[5] We recognize that the provisions analyzed and the statute authorizing waiver of immunity are not the same as in this case. However, we still find *Andrews* to be instructive in the case before us.

**CONCLUSION**

Because we have sustained TxDOT's first issue and determined the trial court erred in denying TxDOT's motion to dismiss each of Powe's causes of action, we need not address TxDOT's remaining issue. Therefore, we reverse the trial court's Order on Defendant Texas Department of Transportation's Motion To Dismiss For Lack Of Jurisdiction which denied TxDOT's motion, grant the motion, and render judgment dismissing Powe's claims against TxDOT for want of jurisdiction.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Davis[6]
(Justice Johnson dissenting)
Reversed and rendered
Opinion delivered and filed August 4, 2021
[CVO6]



---

[6] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.