**Affirmed and Majority and Dissenting Opinions filed December 5, 2025.**



In The

# Fifteenth Court of Appeals

---

### NO. 15-24-00034-CV

---

## EXXON MOBIL GLOBAL SERVICES, Appellant

### V.

## STATE OFFICE OF ADMINISTRATIVE HEARINGS, AND KENESHIA WASHINGTON IN HER OFFICIAL CAPACITY AS ADMINISTRATIVE LAW JUDGE, Appellees

---

**On Appeal from the 419th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-001403**

---

### OPINION

By statute, the State Office of Administrative Hearings (SOAH) is prohibited from hearing a tax appeal concerning property classified as industrial. *See* Tex. Gov't Code § 2003.904 (authorizing appeals to SOAH of "determination[s] of the appraised or market value made by an appraisal review board in connection with real or personal property, other than industrial property"). The issue in this appeal is whether an Administrative Law Judge (ALJ) at SOAH

nevertheless has a ministerial duty to conduct an evidentiary hearing when a party appeals a tax case involving property classified by the taxing authority as industrial. We conclude the ALJ had no such ministerial duty and did not violate the appealing party's due-process rights. We therefore affirm the district court's grant of SOAH and the ALJ's plea to the jurisdiction.

## BACKGROUND

Exxon Mobil Corp. began consolidating operations at a new site in northern Harris County in 2014, including the relocation of its corporate headquarters to that site in 2023. Among the operations consolidated at that site was a subsidiary, Exxon Mobil Global Services (EMGS), which had previously owned and operated computers and telecommunications equipment for Exxon's use. Prior to the relocation, EMGS operated in downtown Houston at 1301 Fannin Street and in an office park at 5150 Westway Park Boulevard near the Sam Houston Tollway.[1] EMGS completely vacated both locations when the leases expired in June and March (respectively) of 2021.

The dispute underlying this appeal arises from the Harris County Appraisal District's (HCAD) appraisal of EMGS's property at its former locations for tax year 2021. For the previous tax year of 2020, HCAD had appraised the value of EMGS's equipment at the two locations at $45,487,537.[2] EMGS claims that because "nearly all" of this equipment was "transferred to the new campus" or "scrapped or recycled" before 2020 ended, the value of the equipment at both

---

[1] The latter location is alternatively listed in the record as 11003 Corporate Center Drive, an adjacent address.

[2] State Office of Administrative Hearings, Harris County Appraisal District Personal Property Account Information, Docket No. 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 at 27–28; State Office of Administrative Hearings, Harris County Appraisal District Personal Property Account Information, Docket No. 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 at 27–28.

locations on January 1, 2021 (the applicable valuation date[3]) was only $1,315,752. According to EMGS, differences in the parties' appraisals of the computers at its former sites "had been settled within SOAH proceedings in previous years." But that changed when HCAD simply rolled over the 2020 appraisal for 2021.

In response to the 2021 appraisal, EMGS filed protests (one for each former site) with the Harris County Appraisal Review Board (ARB). *See* Tex. Tax Code §§ 41.41, 42.21(h). By orders dated July 26, 2021, the ARB denied the protests and simply carried the 2020 appraisal forward to 2021 with the explanation "Formal Value Not Changed."

EMGS appealed to SOAH instead of the district court. HCAD moved to dismiss the appeals on jurisdictional grounds, asserting that HCAD had classified EMGS's property as industrial and that SOAH has no jurisdiction over appeals relating to industrial property. An ALJ agreed with HCAD and refused to hear any evidence on the classification of EMGS's property as industrial before dismissing both appeals for lack of jurisdiction.

EMGS then filed a petition for mandamus against SOAH and the ALJ in Travis County district court, seeking to compel SOAH and the ALJ to withdraw the dismissal orders and to hold an evidentiary hearing regarding whether the property is industrial property.[4] SOAH and the ALJ responded with a plea to the jurisdiction asserting sovereign immunity. The district court granted that plea and dismissed EMGS's petition.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction without regard to whether the asserted claims have

---

[3] *See* Tex. Tax Code § 22.01.

[4] EMGS also sought declaratory relief, but it later dropped that claim.

merit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a court has jurisdiction is a question of law, *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020), and we review a trial court's ruling on a plea to the jurisdiction de novo, *Houston Belt & Terminal Ry. v. City of Houston,* 487 S.W.3d 154, 160 (Tex. 2016).

The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). When the plea to the jurisdiction challenges the sufficiency of the plaintiff's pleadings, as in this case, we must determine "if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Houston Belt,* 487 S.W.3d at 160 (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009)). In determining whether the plaintiff has met that burden, "we liberally construe the pleadings, taking all factual assertions as true and looking to the plaintiff's intent." *Texas Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (quoting *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015)). If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without affording the plaintiff an opportunity to replead. *Miranda*, 133 S.W.3d at 226.

## ANALYSIS

For 30 years after adoption of the Texas Property Tax Code in 1979, a property owner's only avenue to challenge an excessive local appraisal was a petition for review filed in a local district court.[5] In response to taxpayer

---

[5] *See* Tex. Tax Code §§ 42.01, 42.21; *see also* Act of May 26, 1979, 66th Leg., R.S., ch. 841, § 1, sec. 42.01, 42.21, 1979 Tex. Gen. Laws 2217, 2309, 2311 (codified at Tex. Tax Code §§ 42.01, 42.21). In 2005, the Tax Code was amended to provide for an appeal through binding arbitration, but only for property valued at less than $1 million. *See* Tex. Tax Code § 41A.01.

complaints that the cost of litigating property values in district court "often exceeds the shift in appraised value they hoped to obtain," and perceiving a need to "help speed up the appeals process,"[6] the Legislature in 2009 adopted Subchapter Z of Chapter 2003 of the Government Code, a pilot project giving SOAH jurisdiction to decide appraisal appeals in seven populous counties.[7] *See* Tex. Gov't Code §§ 2003.901–.914. Effective January 1, 2014, the Legislature extended that program statewide.[8] As a result, a dissatisfied taxpayer, like EMGS, now has a choice as to where it may bring a challenge to appraisal review board determinations. It can either file a suit for judicial review in district court, *see* Tex. Tax Code § 42.21(a), or, for property other than industrial property, file an appeal in SOAH, *see* Tex. Gov't Code § 2003.904; *see also id.* § 2003.914 ("An appeal to [SOAH] under this subchapter is an election of remedies and an alternative to bringing an appeal under Section 42.01, Tax Code.").

District courts and ALJs at SOAH do not have the same jurisdiction by design. Administrative agencies have only those powers expressly conferred on them by the Legislature. *In re CenterPoint Energy Houston Elec., LLC*, 629 S.W.3d 149, 154 (Tex. 2021). There is no presumption that administrative agencies are authorized to resolve disputes, and courts will not imply additional authority to agencies. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). "Rather, they may exercise only those powers the law, in clear and express statutory language, confers upon them." *Id.*

Although the Legislature created the option for property owners to seek

---

[6] House Research Organization, Bill Analysis, Tex. H.B. 3612, 81st Leg., R.S. (2009).

[7] *See* Act of May 31, 2009, 81st R.S., ch. 1180, § 1, 2009 Tex. Gen. Laws 3745, 3746–49 (codified as amended at Tex. Gov't Code §§ 2003.901–.914).

[8] *See* Act of May 22, 2013, 83rd R.S., ch. 851, § 1–2, 2013 Tex. Gen. Laws 2198–200 (codified at Tex. Gov't Code §§ 2003.901–.914). The 2009 Act excluded industrial *and* mineral properties from SOAH appeals, but the 2013 act dropped the mineral exclusion.

review of appraisal review board orders at SOAH, *see* Tex. Gov't Code § 2003.901, it limited the scope of this review by enacting Government Code Section 2003.904, which provides that the statute applies "only to an appeal of a determination of the appraised or market value made by an appraisal review board" and not to "industrial property." *Id.* § 2003.904. In other words, the Legislature limited SOAH's authority to the review of determinations of appraised or market value of real or personal property that is not industrial property. In this case, the appraisal district determined that EMGS's property was industrial property. And the Legislature has provided no express authority for a SOAH judge to decide in the course of a tax appeal whether property is industrial.

Unlike SOAH, Texas district courts have broad jurisdiction. The Texas Constitution provides district courts with "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. Texas districts courts are courts of general jurisdiction. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). That is, they are presumed to have subject-matter jurisdiction over any dispute, including those that require resolution of an evidentiary issue, unless a specific statute or a provision of the constitution says otherwise. *In re CenterPoint Energy*, 629 S.W.3d at 154. In other words, unlike SOAH, which has no jurisdiction unless the Legislature expressly confers it, district courts have jurisdiction over all issues not expressly excluded from their jurisdiction. *See id.* The Legislature provided for judicial review of appraisal decisions to district court, and it provided no jurisdictional limitations on the subject matter of such judicial review. Tex. Tax Code § 42.21.

These jurisdictional differences are evident within the statute conferring jurisdiction on SOAH when compared to the one that outlines the jurisdiction of a

district court in a tax appeal. In providing SOAH jurisdiction over tax appeals as an alternative to a district court, the Legislature allowed for an appeal to SOAH of an "appraisal review board order determining a protest concerning the appraised or market value of property *brought under Section 41.41(a)(1) or (2), Tax Code*[.]" Tex. Gov't Code § 2003.901 (emphasis added). The Legislature's reference in Section 2003.901 to specific subsections of Section 41.41(a) of the Tax Code is significant in limiting SOAH's jurisdiction. Section 41.41(a) authorizes property owners to protest certain actions of an appraiser or appraisal district to an appraisal review board. Tex. Tax Code § 41.41(a). Subsection (a)(1) authorizes the board's review of a determination of the appraised or market value of property, and subsection (a)(2) authorizes the board's review of a contention of unequal appraisal of the owner's property. *Id.* § 41.41(a)(1), (2). Notably, neither subsection expressly authorizes review of a taxing authority's classification of property as industrial.

Section 41.41(a)(10), on the other hand, authorizes a property owner to protest "any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner." *Id.* § 41.41(a)(10). Here, the appraisal district classified EMGS's property as industrial, and EMGS could have protested that determination pursuant to Section 41.41(a)(10). It did not. And, the Legislature could have provided SOAH with jurisdiction to review the types of determinations covered under Section 41.41(a)(10). It did not. Instead, the Legislature provided limited jurisdiction to SOAH and provided no limitation at all on the jurisdiction of the district court to review such matters on appeal. *See id.* § 42.01(a)(1) (providing that "property owner is entitled to appeal . . . an order of the appraisal review board determining . . . a protest [under Sections 41.41–.48]").

Against this backdrop, EMGS nevertheless chose to file its appeal at SOAH

7

rather than in district court. And then, when the ALJ refused to hold an evidentiary hearing on whether EMGS's property was industrial property, EMGS sought mandamus relief and claimed the ALJ acted ultra vires and violated its due process rights in refusing to decide the issue.

Specifically, EMGS argues that the ALJ's refusal to hold a hearing on its contention that its property was not industrial was ultra vires conduct. To fall within the ultra vires exception, a suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *See Heinrich*, 284 S.W.3d at 372; *see also Hall v. McRaven*, 508 S.W.3d 232, 240–41 (Tex. 2017). "[A]ctions taken 'without legal authority' ha[ve] two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *McRaven*, 508 S.W.3d at 239. A government officer acts without legal authority if he or she exceeds the bounds of the granted authority or if his or her acts conflict with the law itself. *Houston Belt*, 487 S.W.3d at 158.

The question presented in this appeal is not whether the ALJ had a ministerial duty to consider its jurisdiction before proceeding. It certainly had such a duty and fulfilled it by acknowledging the Legislature limited its jurisdiction and that it therefore could not proceed with the appeal because HCAD had designated the property as industrial. Rather, the real question is whether the ALJ had a ministerial duty on appeal to hold an evidentiary hearing to determine, as a factual matter, whether HCAD properly designated the property as industrial. Framed this way, the question yields an obvious answer: the ALJ had no ministerial duty to hold an evidentiary hearing for the purpose of making a determination that the Legislature has not expressly authorized it to make.

EMGS complains, however, that the ALJ had a ministerial duty to decide its own jurisdiction and that by declining to consider facts EMGS contends prove its

property is not industrial, the ALJ acted ultra vires. The problem with this argument is that it likens an ALJ's jurisdiction to a district court's jurisdiction. Without question, a district judge must consider its own jurisdiction when presented with a case, even if that requires hearing evidence. And, to an extent, ALJs must consider their jurisdiction as well, as the ALJ did in this case by dismissing the appeal upon learning of the industrial classification of EMGS's property. But EMGS takes the argument for a ministerial duty even further. In effect, EMGS suggests that although the Legislature did not expressly provide ALJs with the power to decide whether property is industrial, it must do so anyway because that fact implicates the ALJs jurisdiction.

EMGS's contention illustrates a misunderstanding of what constitutes an ultra vires act. An ultra vires act is, as relevant here, the refusal to perform a ministerial act. *See id*; *McRaven*, 508 S.W.3d at 239. Had the Legislature given express authority for the ALJ to decide the proper classification of property subject to tax and it refused to do so, then EMGS may very well have alleged an ultra vires act sufficient to defeat a plea to the jurisdiction. But it didn't. The Legislature gave SOAH no express authority to decide how to classify property subject to taxation, and we decline to alter the statutory scheme the Legislature created for tax appeals by imputing such authority. If anything, the ALJ would have acted ultra vires if it went beyond the powers granted by the Legislature as EMGS requested. *See Norman v. Janak*, No. 15-24-00068-CV, 2025 WL 1271748, at *3 (Tex. App.—15th May 1, 2025, pet. denied) (rejecting argument that executive director of TDCJ should exercise discretion to decide issue beyond his authority).

EMGS's due process claim fares no better. "If an individual is deprived of a property right, the government must afford an appropriate and meaningful opportunity to be heard to comport with procedural due process." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998). What process is due depends on

the practical requirements of the circumstances, using a flexible standard that considers "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995).

Applying this test, we conclude that EMGS's due process claim fails on its face because it seeks procedural process SOAH does not have the express authority to provide, as discussed above. As explained previously, SOAH's jurisdiction in a tax appeal is limited, and the ALJ did not have the discretion to exceed the jurisdiction granted by the Legislature. The only way EMGS could have received the process that it claims was due is if the ALJ had violated this principle of administrative law and exceeded the powers granted by the Legislature.

Moreover, EMGS chose to file its appeal at SOAH rather than in the district court. EMGS could have chosen to appeal to the district court, which would have allowed it to challenge the industrial classification with a full evidentiary hearing, had it chosen to do so.[9] SOAH provided EMGS with full procedural process for the issues within its statutory authority, and EMGS cannot be heard to complain of a due process concern in selecting SOAH over a district court that had full authority to decide any factual dispute concerning classification of its property.

---

[9] According to EMGS's pleading in the district court—which no party disputed—"the classification of a property makes no difference as to the method used to appraise it or as to its ultimate appraised value," because property "must be valued using the same method and *should* result in the same appraised value" no matter what category is applied. Assuming that is the case, it is even more apparent why the Legislature provided no express authority for SOAH to decide the issue as an evidentiary matter. Instead, the Legislature provided the taxpayer a choice—appeal the taxing authority's decision to district court if the property is classified as industrial or to either the district court or SOAH if it is not. The Legislature's provision of this choice precludes EMGS's claim of procedural infirmity.

The dissent invites us to make bad law because of bad facts in the interest of "doing justice." *See* Dissent at 5. It starts by mistakenly equating district judges and administrative law judges. They are not the same. They do not have the same jurisdiction, as explained fully in this opinion. The dissent cites no authority for the idea that an administrative law judge must abide by the same rules as a district judge when reviewing a jurisdictional plea. This difference causes the dissent's analogy to *Miracle on 34th Street*, dissent at 5-6, while creative, to fall flat—an administrative proceeding at SOAH is not a "court" proceeding in any respect and should not be treated as such. The dissent contends that "we have no business" insisting that EMGS appeal to a district court to obtain review of a taxing authority's classification of its property as industrial. Dissent at 3. But what the Court has no business doing is becoming the first court in Texas to create new, implied powers for an ALJ that the Legislature did not expressly grant it.

The dissent concludes by noting the amount of money EMGS will lose because a mistake was made and expressing that "we have to do better than this." Dissent at 6. It is not the role of a court, however, to choose winners and losers based on the amount of money one party will lose due to a procedural mistake. Instead, we are charged with following the law no matter the outcome. Contrary to what the dissent believes, as a court of law we can do no better than that.

## CONCLUSION

We affirm the district court's order dismissing EMGS's claims for lack of jurisdiction.

/s/ Scott K. Field
Scott K. Field
Justice

11

Before Chief Justice Brister and Justices Field and Farris.